Alfred S. Donau III
Arizona State Bar #3540
Pima County Bar #14784
**DONAU & BOLT**
3505 North Campbell Avenue, Suite 501
Tucson, Arizona 85719-2033
Telephone (520) 795-8710

Attorneys for Defendant

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>MICHAEL JAMES GESTY,<br><br>    Defendant. | CASE NO.: 4:11-CR-02650-JGZ-DTF<br><br>**OBJECTIONS TO PRESENTENCE INVESTIGATION REPORT** |

COMES NOW, the Defendant, MICHAEL JAMES GESTY, by and through counsel undersigned and hereby lodges the following objections to the Presentence Report authored on the September 4, 2012.

At the outset, it should be known that counsel undersigned provided to the Presentence Report writer reports of investigation interviews by Weaver Barkman (attached as Exhibit C), a copy of a letter sent to Angela Woolridge, together with a recorded statement of Montoya (attached as Exhibit D) and an opinion regarding the use of a revocable trust for the purchase of firearms. None of these items were acknowledged in the Presentence Report. Additionally, counsel now provides the Presentence Report writer with the evidence log (attached as Exhibit A) from the search of Defendant Gesty's house and corporate documents relating to BWWA Enterprises, L.L.C. (attached as Exhibit B)

1.  Paragraph 3 currently states, "...the Defendant pleaded guilty to Count 9 of the indictment, which charged Possession of Firearms and Ammunition by a Drug User..." Defendant Gesty plead guilty to the possession of a single firearm, not "firearms".

2.  In Paragraph 6, the Presentence Report writer only relates what Jeremy Algier allegedly told ATF. The Presentence Report writer had in his possession information and statements from Jim Harlow and Ruarke Brandenburg that Jeremy Algier had been fired from Spartan Armory, for among other

things, coming to work high and being caught attempting to manufacture a device to convert a Glock pistol to automatic. There are statements from these witnesses who worked at Spartan Armory and no firearms were being converted to fully automatic and that Defendant Gesty was "an idiot when it comes to anything beyond basic stuff as it relates to firearms." (See statements of Harlow - Exhibit C).

3. In Paragraph 8, the Presentence Report writer acknowledges that Montoya told agents initially that neither Defendant Gesty or the employees at Spartan Armory had anything to do with converting the weapons to fully automatic. However, the Presentence Report writer contends that Defendant Gesty showed Montoya how to convert the PS90 to fully automatic, despite numerous reports to the contrary (See statements of Brandenburg, Harlow, and Hudson - Exhibit C).

4. Paragraph 9 contains the same objection as stated above with regards to Paragraph 8, particularly as all witnesses, with the exception of Montoya, say that it was common knowledge that Montoya was purchasing the firearms for a family trust. The Presentence Report writer ignores a taped conversation of Montoya on April 4, 2012 saying that the firearms Montoya took were for the family trust.

5. Paragraph 11 should state that when searching Defendant Gesty's residence, the agents seized one firearm, not "several". That firearm is the one to which Defendant Gesty plead guilty. Left at the residence were six firearms, making the total of seven firearms possessed by Defendant Gesty. (See Evidence Log of 9960 E. Wolford Place - Exhibit A).

6. Despite the allegations contained in Paragraph 12, all weapons purchased by Montoya were recorded. When the weapons in question were purchased by Vega and Smith, Defendant Gesty was not present and was very angry with the employees when he found out what happened (See statements of Brandenburg and Smith - Montoya PS90 Sales - Exhibit C). The Presentence Report writer indicates that Defendant Gesty has failed to record numerous firearms that had been purchased from the store. The only firearms that had not been recorded were the four firearms from March 28, 2011, purchased in the late afternoon. That paperwork had been filled out but not recorded on the logs by the next morning when the business was searched. A dealer has twenty-four hours from the time of sale to record the transaction in their log.

7. With regard to Paragraph 20, Defendant Gesty plead guilty to one firearm which would mean no enhancement. If relevant conduct is considered as it relates to all firearms that were owned and

possessed by Defendant Gesty, there were, in Defendant Gesty's home, six additional firearms which would, if counted, lead to a two level enhancement. None of the firearms at the store were owned or possessed by Defendant Gesty but rather BWWA Enterprises, L.L.C. a lawful, legal, and separate entity in the state of Arizona. Therefore, Paragraph 20 should be a 0 or no more than 2.

8. With regard to Paragraph 21, Defendant Gesty did not possess firearms while attempting to leave the United States, and there was certainly insufficient evidence to support a false statement. Therefore, the 4 level enhancement is not appropriate.

9. The Adjusted Offense Level in Paragraph 25 should be 20 and at the very most 22. With a three level deduction pursuant to Paragraphs 27 and 28, the Total Offense Level should be 17, or at the most 19.

10. Defendant Gesty denies having a close relationship with his sister, Christina, as stated in Paragraph 38.

11. With regard to Paragraph 53, Defendant Gesty believes that he has a personal liability for the IRS debt.

The Offense Level should be 17 or at the most 19, leading to a Guideline Recommended sentence to 24 to 30 months or 30 to 37 months.

With regard to Justification, Defendant Gesty objects to Justification in the Sentencing Recommendation where the Presentence Report writer indicates that there was aggravating circumstances in that Defendant Gesty was aware of and assisted in straw purchases that were occurring in his business, and the allegation Defendant Gesty was aware that some of the firearms were actually purchased for known felons. This is directly contrary to the statements previously provided to the Presentence Report writer which indicates that Defendant Gesty believed that the purchases by Montoya were for a family trust. This belief was confirmed by Montoya after his arrest in a tape recorded conversation together with statements by witness Brandenburg.

RESPECTFULLY SUBMITTED this 20th day of September, 2012.

**DONAU & BOLT**
Attorneys for Defendant


*/s/ Alfred S. Donau III*
Alfred S. Donau III